1

2

3

4

5

6

7

8          UNITED STATES  DISTRICT COURT

9            Northern District of California

10              San Francisco Division

11   SALESBRAIN, INC., et al.,                    No. C 12-05026 LB

12          Plaintiffs                            **ORDER (1) DISMISSING MR. MORIN
                                                  AND MR. RENVOISE AS**
13      v.                                        **PLAINTIFFS, (2) GRANTING MR.
                                                  OTIS'S MOTION TO DISMISS, AND**
14   ANGELVISION TECHNOLOGIES, et al.,            **(3) GRANTING ANGELVISION'S
                                                  MOTION TO DISMISS**
15          Defendants.

16   _____/            [Re: ECF No. 16, 19]

17                   **INTRODUCTION**

18      Salesbrain, LLC ("SalesBrain"), Patrick Renvoise, and Christophe Morin (collectively,

19   "Plaintiffs") sued AngelVision Technologies, Inc. ("AngelVision") and Jeff Otis for claims arising

20   out of a prior business relationship between Salesbrain and AngelVision and actions taken after that

21   relationship ended.  See First Amended Complaint ("FAC"), ECF No. 10.[1]  Two motions to dismiss

22   have been filed.  First, AngelVision moves to dismiss Plaintiffs' third, fourth, and fifth claims for

23   failure to state claims upon which relief can be granted and to dismiss Mr. Renvoise and Mr. Morin

24   for lack of standing.  Second, Mr. Otis moves to dismiss Plaintiffs' first and second claims for lack

25   of personal jurisdiction and for failure to state claims upon which relief may be granted.  Otis

26   Motion, ECF No. 19.  For the reasons stated below, the court **DISMISSES** Mr. Morin and Mr.

27   _____

28        [1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-
     generated page numbers at the top of the document.

C 12-05026 LB
ORDER

1   Renvoise as plaintiffs to this action, **GRANTS** Mr. Otis's motion to dismiss for lack of personal

2   jurisdiction, and **GRANTS** AngelVision's motion to dismiss for failure to state a claim upon which

3   relief may be granted.[2]

4                                           **STATEMENT**

5        According to Plaintiffs' First Amended Complaint, since at least 2002, SalesBrain "has been

6   engaged in the business of providing sales and marketing training and creative marketing materials

7   for others." First Amended Complaint ("FAC"), ECF No. 10 ¶ 9. Its "seminars and marketing

8   materials are based on four neuromarketing principles uniquely developed by [it]: 'Diagnose the

9   pain, Differentiate your claims, Demonstrate the gain, and Deliver to the Old Brain." *Id.* Mr.

10  Renvoise and Mr. Morin authored materials—"Selling IQ: Methodology, Processes, Models, Metrix

11  and Templates"—and a book—Selling to the Old Brain—that included the four principles. *Id.* ¶ 10-

12  11. Mr. Renvoise and Mr. Morin registered these materials and this book (the "Copyrighted

13  Works") with the U.S. Copyright Office in 2002 and 2003, respectively. *Id.* Mr. Renvoise and Mr.

14  Morin assigned the Copyrighted Works to SalesBrain in 2003 and 2007, respectively, and thus

15  "SalesBrain is the owner of all rights in the [Copyrighted] Works." *Id.* ¶¶ 10-12, 27.

16       Since at least 2005, SalesBrain has provided select partners with a license "to use its model in

17  sales training and the creation of marketing for others in exchange for a percentage of the business

18  gained through use of the" Copyrighted Works. *Id.* ¶ 13. Thus, "in or about 2008, SalesBrain

19  entered into a confidentiality and non-disclosure agreement ('NDA') with AngelVision for the

20  purpose of purs[u]ing a business agreement," whereby "SalesBrain disclosed to AngelVision its

21  proprietary neuromarketing principles and how to use them in sales and in the creation of marketing

22  materials for others." *Id.* ¶¶ 14-15; *see* Otis Declaration, Exh. A (executed NDA), ECF No. 18-1.[3]

23

24       [2] Pursuant to Civil Local Rule 7-1(b), the court finds this matter suitable for determination

25  without oral argument and vacates the April 18, 2013 hearing.

26       [3] As a general rule, a district court "'may not consider any material beyond the pleadings in

27  ruling on a Rule 12(b)(6) motion.'" *United States v. Corinthian Colleges*, 655 F.3d 984, 998-99 (9th
    Cir. 2011) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (internal citation and quotation

28  marks omitted)). Courts may, however, consider materials that are submitted with and attached to
    the complaint. *Id.* (citing *Lee*, 250 F.3d at 688). Courts also may consider unattached evidence on

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

UNITED STATES DISTRICT COURT
For the Northern District of California

1   Paragraph 2 of the NDA, titled "Proprietary Information," provides in full:

2         As used in this Agreement, the term "Proprietary Information" shall mean all
trade secrets and confidential or proprietary information (of whatever type and for
3         whatever purpose, including but not limited to business and technical information,
customer information, financial information, and software code) of the Disclosing
4         Party designated as such by the Disclosing Party, whether by letter, the use of an
appropriate stamp or legend, or orally that the Disclosing Party discloses to the
5         Recipient, and all such information that the Disclosing Party discloses to the
Recipient which the Recipient reasonably should expect to be or contain such trade
6         secret and confidential or proprietary information of the Disclosing Party.  The term
"Proprietary Information" shall also include the nature and existence of the
7         discussions and negotiations between Company and SALESBRAIN contemplated by
this Agreement, as well as all memoranda, notes, reports, documents, and other media
8         containing Proprietary Information, as well as any copies and extracts of Proprietary
Information and any studies and data containing Proprietary Information prepared by
9         or for the benefit of the Recipient.

10   Otis Declaration, Exh. A, ECF No. 18-1 at 2.  Paragraph 3 of the NDA, title "Treatment of

11   Proprietary Information," provides in relevant part:

12         The Recipient shall hold in strict confidence, and shall not disclose to any person
either inside or outside of its organization (if the Recipient is an organization and
13         except as otherwise provided for in this Agreement) any Proprietary Information.  The
Recipient shall use such Proprietary Information only for the purposes contemplated
14         by this Agreement and shall not use or exploit such Proprietary Information, either
directly or indirectly, for its own benefit, for the benefit of another, or to compete with
15         the Disclosing Party without the prior written consent of the Disclosing Party. . . .  The
foregoing shall not apply to Proprietary Information which is (a) in the public domain
16         through no fault of the receiving party, (b) rightfully known to the receiving party

17   _____

18   which the complaint "necessarily relies" if: (1) the complaint refers to the document; (2) the

19   document is central to the plaintiff's claim; and (3) no party questions the authenticity of the

document.  *Id.* (citing *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *Lee*, 250 F.3d at 688).

20

21         Here, the NDA that SalesBrain and AngelVision entered into is central to Plaintiffs' third

and fourth claims for breach of contract and breach of the implied covenant of good faith and fair

22   dealing, respectively, and in fact Plaintiffs' First Amended Complaint refers to the NDA generally

and specifically cites Paragraph 3 of it.  *See* FAC, ECF No. 10 at ¶¶ 14-16, 35-42.  Because the

23   entire NDA was not attached to Plaintiffs' First Amended Complaint, Mr. Otis attached it to his

declaration in support of AngelVision's motion to dismiss.  *See* Otis Declaration, Exh. A, ECF No.

24   18-1.  Neither party questions the authenticity of the NDA that Mr. Otis submitted.  *See* Opposition

25   to AngelVision Motion, ECF No. 23 at 3 (citing Paragraph 6 of the NDA that Mr. Otis submitted).

Accordingly, the court will consider the entire NDA for purposes of AngelVision's motion to

26   dismiss for failure to state a claim upon which relief can be granted.

27

28         The court also notes that AngelVision asks the court to take judicial notice of certain

information.  *See* Request for Judicial Notice, ECF No. 17.  Because the court deems the information

to be unnecessary to the resolution of this motion, the court does not take judicial notice of it.

1   without any limitation on use or disclosure prior to its receipt from the disclosing
2   party, (c) independently developed by the receiving party. . . .

3   *Id.* And Paragraph 6(e) of the NDA provides: "The confidentiality, non-use, and non-disclosure

4   obligations set forth in this Agreement shall survive with respect to each item of the Proprietary

5   Information for two years from the date of this Agreement." *Id.* at 3. The NDA was signed by

6   AngelVision's representative (not Mr. Otis) on March 24, 2008, and it signed by Mr. Renvoise on

7   behalf of SalesBrain on April 8, 2008. *Id.*

8       Sales Brain alleges that, "[i]n or about 2011/2012, through the receipt of a direct solicitation

9   from AngelVision, SalesBrain became aware of AngelVision's use of its four neuromarketing

10  principles." FAC, ECF No. 10 ¶ 17. "Upon information and belief," SalesBrain alleges that

11  AngelVision, "an Oregon corporation with its principal place of business located in" Oregon that

12  "sells its services and products in interstate commerce," "uses," without SalesBrain's permission,

13  "SalesBrain's [Copyrighted] Works, or portions thereof, at least in its marketing video to solicit

14  customers, including, but not limited to, its webinars [titled 'Coffee with AngelVision.'" *Id.* ¶¶ 7,

15  18-19, 24; *see id.*, Exh. C. In support of this allegation, SalesBrain attached to its First Amended

16  Complaint screenshots of AngelVision's "Coffee with AngelVision" webinar that contain

17  SalesBrain's four neuromarketing principals. *See id.*, Exh. C. Below the four marketing principals

18  the following is stated: "Source: SalesBrain." *See id.*

19      SalesBrain also alleges that, "[u]pon information and belief, AngelVision's copying of

20  SalesBrain's [Copyrighted] Works was performed by, at the direction of, or under the supervision

21  of," AngelVision's president, Mr. Otis. *Id.* ¶ 20. SalesBrain also alleges, "[o]n information and

22  belief," that Mr. Otis "is an officer and principal shareholder of AngelVision." *Id.* ¶ 8. SalesBrain

23  further alleges that Mr. Otis resides in Portland, Oregon and "has the right to and ability to supervise

24  AngelVision's copying of SalesBrain's [Copyrighted] Works" and has a "financial interest in

25  AngelVision's infringing activity" and in "the exploitation of SalesBrain's [Copyrighted] Works."

26  *Id.* ¶¶ 8, 31-33.

27      In addition, SalesBrain also alleges that since at least 2003 it has used its neuromarketing

28  principles—"Diagnose the pain, Differentiate your claims, Demonstrate the gain, and Deliver to the

1    Old Brain"—"or a variation thereof," as a tag line "in connection with its marking and consulting

2    services." *Id.* ¶ 21.  SalesBrain alleges that it "has expended a great amount of time, effort and

3    money in connection with the promotion and advertisement of its goods and services which are sold

4    or offered for sale in relation to the tag line and that the tag line "has become an asset of substantial

5    value as a symbol of SalesBrain, its quality products and its [goodwill]." *Id.* ¶ 22.  SalesBrain

6    further alleges that prior to AngelVision's alleged use of the tag line, "SalesBrain has continuously,

7    extensively and widely promoted, advertised and/or sold its services" using the tag line "in various

8    states and foreign countries and has widely used" the tag line "to identify its goods and distinguish

9    them from the goods of others." *Id.* ¶ 23.  Finally, SalesBrain alleges that AngelVision, "with at

10    least constructive notice" of SalesBrain's rights with respect to the tag line, "adopted and used" the

11    tag line in preparing sales and marketing materials to others, and that this use "is likely to cause

12    confusion, mistake, or to deceive as to origin, affiliation, connection, sponsorship, or association of

13    AngelVision with SalesBrain, or as to the origin, sponsorship, or approval of AngelVision's use of"

14    the tagline by SalesBrain.  *Id.* ¶¶ 24, 45.

15      Based on these allegations, Plaintiffs filed the instant action against Defendants.  *See* Original

16    Complaint, ECF No. 1.  In their First Amended Complaint, which they filed as a matter of right,

17    Plaintiffs assert the following five claims: (1) copyright infringement (against both AngelVision and

18    Mr. Otis); (2) vicarious liability for copyright infringement (against Mr. Otis only); (3) breach of

19    contract (against AngelVision only); (4) breach of the implied covenant of good faith and fair

20    dealing (against AngelVision only); and trademark infringement under the Lanham Act, 15 U.S.C. §

21    1125(a) (against AngelVision only).  *See id.* ¶¶ 26-47.  SalesBrain alleges that Mr. Otis "acted in

22    concert [with AngelVision] and directly participated in the acts complained of [in the First Amended

23    Complaint] and is jointly and severally liable for those acts."  *Id.* ¶ 8.

24      Now, AngelVision moves to dismiss Plaintiffs' third, fourth, and fifth claims for failure to state

25    claims upon which relief can be granted and to dismiss Mr. Renvoise and Mr. Morin for lack of

26    standing.  And Mr. Otis moves to dismiss Plaintiffs' first and second claims for lack of personal

27    jurisdiction and for failure to state claims upon which relief may be granted.  Otis Motion, ECF No.

28    19.  Plaintiffs oppose both motions.  Opposition to AngelVision Motion, ECF No. 23; Opposition to

1   Otis Motion, ECF No. 26.

2                                          **ANALYSIS**

3   **I. ANGELVISION'S MOTION TO DISMISS MR. RENVOISE AND MR. MORIN AS**

4   **PLAINTIFFS**

5          At the outset, the court will address AngelVision's argument that Mr. Renvoise and Mr. Morin

6   do not have standing to bring the copyright infringement claims in this action.  *See* AngelVision

7   Motion, ECF No. 16 at 11.[4]  Specifically, AngelVision argues that, because Mr. Renvoise and Mr.

8   Morin assigned all rights in the Copyrighted Works to SalesBrain in 2003 and 2007, respectively

9   (*see* FAC, ECF No. 10 ¶¶ 10-12, 27), SalesBrain, and not Mr. Renvoise or Mr. Morin, is the real

10  party in interest to this claim.  AngelVision Motion, ECF No. 16 at 11 (citing Federal Rule of Civil

11  Procedure 17(a)(3) and *Davis v. Yageo Corp.*, 481 F.3d 661, 675-78 (9th Cir. 2007)).

12         The Ninth Circuit has explained who has standing to bring a copyright infringement claim:

13              Section 501(b) of the 1976 Copyright Act establishes who is legally authorized to
                sue for infringement of a copyright:

14
                     The legal or beneficial owner of an exclusive right under a
15                   copyright is entitled, subject to the requirements of section 411, to
                     institute an action for any infringement of that particular right
16                   committed while he or she is the owner of it.

17              17 U.S.C. § 501(b) (emphasis added).  The meaning of that provision appears clear.
                To be entitled to sue for copyright infringement, the plaintiff must be the "legal or
18              beneficial owner of an exclusive right under a copyright."  *See* 4 Business and
                Commercial Litigation in Federal Courts, at 1062, § 65.3(a)(4) (Robert L. Haig ed.)
19              (West Group & ABA 1998) ("If a claimant is not a proper owner of copyright rights,
                then it cannot invoke copyright protection stemming from the exclusive rights
20              belonging to the owner, including infringement of the copyright.").

21  _____

22         [4] The parties' arguments focus on whether Mr. Renvoise or Mr. Morin have standing to bring
    a copyright infringement claim; the only arguments about whether they have standing to bring the

23  other claims (for breach of contract, breach of the implied covenant of good faith and fair dealing,
    and trademark infringement) are made by SalesBrain in its reply brief.  *See* SalesBrain Reply, ECF

24  No. 29 at 5.  Nevertheless, the court makes clear that, as alleged, Mr. Renvoise and Mr. Morin do
    not have standing to bring these claims either.  In their complaint, Plaintiffs do not allege that Mr.

25  Renvoise or Mr. Morin had anything to do with any contract between SalesBrain and AngelVision,
    so they do not standing to bring those claims.  *See generally* FAC, ECF No. 10.  And Plaintiffs also

26  do not allege that Mr. Renvoise or Mr. Morin are either (1) owners of a federal mark registration, (2)
    owners of an unregistered mark, or (3) nonowners with a cognizable interest in an allegedly

27
28  infringed trademark.  *See generally id.*; *see also* 15 U.S.C. § 1114(a); *Halicki Films, LLC v.
    Sanderson Sales and Mktg.*, 547 F.3d 1213, 1225 (9th Cir. 2008).

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

UNITED STATES DISTRICT COURT
For the Northern District of California

1  *Silvers v. Sony Pictures Entm't Inc.*, 402 F.3d 881, 889 (9th Cir. 2005); *see Minden Pictures, Inc. v.*

2  *Pearson Educ., Inc.*, No. C 11–05385 WHA, 2013 WL 812412, at *5 (N.D. Cal. Mar. 5, 2013)

3  ("Under Section 501(b) of the 1976 Copyright Act, only the legal or beneficial owner of one of the

4  six enumerated 'exclusive' rights is authorized to sue for infringement of copyright.") (citing

5  *Silvers*).

6      Acknowledging the assignments of the Copyrighted Works to SalesBrain, Plaintiffs state that

7  Mr. Renvoise and Mr. Morin were included as plaintiffs to this action "as a precaution in the event

8  [D]efendants were to argue, at some point in the litigation, SalesBrain lacked standing to bring this

9  action" and that their inclusion presents "no harm" to AngelVision.  Opposition to AngelVision

10  Motion, ECF No. 23 at 8.  The problem is that, as alleged, Mr. Renvoise and Mr. Morin are no

11  longer legal or beneficial owner of any exclusive rights in the Copyrighted Works, so under Section

12  501(b) of the 1976 Copyright Act they have no standing to sue for the infringement of the

13  Copyrighted Works.  And to the extent that Plaintiffs are worried that AngelVision later will argue

14  that it actually is Mr. Renvoise and Mr. Morin, and not SalesBrain, who are the injured parties and

15  have standing, the court will consider whether judicial estoppel would bar such as argument.[5]  Until

16  then, though, as alleged, Mr. Renvoise and Mr. Morin have no standing to sue for copyright

17  infringement.[6]

18

19  ───────────────

20  [5] Judicial estoppel is an equitable doctrine that prevents a party from benefitting by taking one position but then later seeking to benefit by taking a clearly inconsistent position. *Hamilton v. State Farm Fire & Cas. Ins. Co.*, 270 F.3d 778, 782 (9th Cir. 2001); see New Hampshire v. Maine, 532 U.S. 742, 750-51 (2001) (providing non-exhaustive factors used to determine whether judicial estoppel applies).  The doctrine may be invoked by the court at its discretion.  *Morris v. California*, 966 F.2d 448, 453 (9th Cir. 1991).  Federal law on judicial estoppel governs cases in federal courts regardless of whether they involve state law claims.  *Johnson v. Or. Dep't of Human Res. Rehab. Div.*, 141 F.3d 1361, 1364 (9th Cir. 1998); *Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 603 (9th Cir. 1996).

25

26  [6] The court dismisses Mr. Renvoise and Mr. Morin without prejudice at this time because Plaintiffs allegations concerning the assignment of the Copyrighted Works do not specify whether all of their exclusive rights in the Copyrighted Works were assigned or not.  *See* FAC, ECF No. 10 ¶¶ 12, 26-34.  And, as the court noted above in Footnote 4, Plaintiffs's allegations concerning their other claims are likewise bare as far as Mr. Renvoise's and Mr. Morin's standing.  *See generally* FAC.

## II. MR. OTIS'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

As stated above, SalesBrain brings two claims against Mr. Otis: for copyright infringement and for vicarious liability for copyright infringement. FAC, ECF No. 10 ¶¶ 26-34. Mr. Otis argues that these claims against him should be dismissed because the court lacks personal jurisdiction over him. *See* Otis Motion, ECF No. 19 at 13-16.[7]

### A. Legal Standard

"When a nonresident defendant raises a challenge to personal jurisdiction, the plaintiff bears the burden of showing that jurisdiction is proper." *Toyz, Inc. v. Wireless Toyz, Inc.*, No. C09-05091 JF (HRL), 2010 WL 334475, at *6 (Jan. 25, 2010) (citing *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 839 (9th Cir. 1986)). "In the context of a motion to dismiss based upon pleadings and affidavits, the plaintiff may meet this burden by making a prima facie showing of personal jurisdiction." *Id.* (citing *Metro. Life Ins. v. Neaves*, 912 F.2d 1062, 1064 n.1 (9th Cir. 1990); *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977)). "In determining whether the plaintiff has made a prima facie showing, documents submitted by the plaintiff are construed in the light most favorable to the plaintiff and all doubts are resolved in the plaintiff's favor." *Id.* (citing *Metro. Life Ins.*, 912 F.2d at 1064 n.1).

Where there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits. *See* Fed. R. Civ. Pro. 4(k)(1)(A); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). Here, there is no applicable federal statute governing personal jurisdiction in copyright or trademark infringement actions, so the court applies California's long-arm jurisdictional statute to determine whether it has personal jurisdiction over Mr. Otis. Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same. *Panavision*, 141 F.3d at 1320; Cal. Code Civ. P. § 410.10 ("A court of this state may

---

[7] Mr. Otis also argues that, if the court does find that specific personal jurisdiction exists over him, Plaintiffs' first and second claims, which are the only ones brought against him, fail to state claims upon which relief can be granted. *See* Otis Motion, ECF No. 16-19. Because the court concludes that specific personal jurisdiction does not exist over him, the court does not reach his argument that Plaintiffs' claims otherwise fail.

1    exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United

2    States").  A court may exercise personal jurisdiction over a defendant consistent with due process

3    only if he or she has "certain minimum contacts" with the relevant forum "such that the maintenance

4    of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *International*

5    *Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

6        "Unless a defendant's contacts with a forum are so substantial, continuous, and systematic that

7    the defendant can be deemed to be 'present' in that forum for all purposes, a forum may exercise

8    only 'specific' jurisdiction—that is, jurisdiction based on the relationship between the defendant's

9    forum contacts and the plaintiff's claim." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et*

10   *L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006).  Here, there are no allegations that Mr. Otis

11   has sufficient contacts to support general personal jurisdiction, and Mr. Otis does not make that

12   argument in his opposition brief.[8]  *See* FAC, ECF No. 10 ¶¶ 8, 20, 31-33; Opposition to Otis Motion,

13   ECF No. 26 at 8-16 (arguing only that specific personal jurisdiction exists over Mr. Otis).  Thus,

14   only specific jurisdiction is at issue here.

15       The Ninth Circuit analyzes specific jurisdiction according to a three-prong test: (1) the

16   nonresident defendant must purposefully direct his activities at the forum state or purposefully avail

17   himself of the benefits and protections of the laws of the forum state, (2) the claim must be one

18   which arises out of or relates to the defendant's forum-related activities, and (3) the exercise of

19   personal jurisdiction must be reasonable.  *Id.* at 1205-1206 (citing *Schwarzenegger v. Fred Martin*

20   *Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)).

21   **B.  Discussion**

22       Initially, Mr. Otis argues that Plaintiffs have not met (and in fact cannot meet) their burden to

23   sufficiently show that he, in his individual capacity, purposefully directed activities at California or

24   purposefully availed himself of the benefits and protections of California's laws.  *See* Otis Motion,

25   ECF No. 19 at 6-9, 14; Otis Reply, ECF No. 30 at 2-7.

26

27   ───────────────

28       [8] General jurisdiction exists when a defendant is domiciled in the forum state or his activities
     there are "substantial" or "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A.*
     *v. Hall*, 466 U.S. 408, 414-16 (1984).

UNITED STATES DISTRICT COURT
For the Northern District of California

A "plaintiff may satisfy [the first prong of test for specific personal jurisdiction] by demonstrating that the defendant either purposefully availed itself of the privilege of conducting activities in the forum, or purposefully directed its activities at the forum."  *Washington Shoe Co. v. A-Z Sporting Goods, Inc.*, 704 F.3d 668, 672 (9th Cir. 2012).  The Ninth Circuit has explained that although it has "sometimes used these two terms in shorthand fashion as a single concept, they 'are, in fact, two distinct concepts.'"  *Id.* (quoting *Schwarzenegger*, 374 F.3d at 802).  The Ninth Circuit has further explained that "'[a] purposeful availment analysis is most often used in suits sounding in contract.'"  *Id.* (quoting *Schwarzenegger*, 374 F.3d at 802).  "By contrast, '[i]n tort cases, [courts in the Ninth Circuit] typically inquire whether a defendant "purposefully direct[s] his activities" at the forum state, applying an "effects" test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum.'"  *Id.* at 672-73 (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc).

"The 'purposeful direction' or 'effects' test is based on *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984)."  *Id.* at 673.  "It 'requires that the defendant . . . have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'"  *Id.* (quoting *Mavrix Photo*, 647 F.3d at 1228 (internal quotation marks omitted)).  "Thus, courts may exercise personal jurisdiction over a defendant who engages in an intentional act that causes harm in the forum state, even if that act takes place outside of the forum state."  *Id.* (citing *Yahoo! Inc.*, 433 F.3d at 1206; *Panavision*, 141 F.3d at 1320 ("It is not required that a defendant be physically present or have physical contacts with the forum, so long as his efforts are 'purposefully directed' toward forum residents.")).

Plaintiffs rely upon two sources in an attempt to meet their burden: the allegations in their First Amended Complaint, and the statements made in declarations submitted in support of their opposition brief.  As recited above, the Mr. Otis-related allegations in Plaintiffs' First Amended Complaint are these:

- Mr. Otis resides in Portland, Oregon and "is an officer and principal shareholder of AngelVision."  FAC, ECF No. 10 ¶ 8.

- Mr. Otis is AngelVision's President.  *Id.* ¶ 20.

- "AngelVision's copying of SalesBrain's [Copyrighted] Works was performed by, at

1    the direction of, or under the supervision of," Mr. Otis.  *Id.* ¶ 20.

2    • Mr. Otis and "has the right to and ability to supervise AngelVision's copying of
     SalesBrain's [Copyrighted] Works" and has a "financial interest in AngelVision's
3    infringing activity" and in "the exploitation of SalesBrain's [Copyrighted] Works."
     *Id.* ¶¶ 31-33.

4

5        Mr. Otis argues that Plaintiffs have not met their burden with these broad and conclusory

6    allegations.  Otis Motion, ECF No. 19 at 6-9, 14.  The court agrees.

7        "Under the fiduciary shield doctrine, a person's mere association with a corporation that causes

8    injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the

9    person."  *Davis v. Metro. Prod., Inc.*, 885 F.2d 515, 520 (9th Cir. 1989) (citing *Weller v. Cromwell

10   Oil Co.*, 504 F.2d 927 (6th Cir. 1974), and *United States v. Montreal Trust Co.*, 358 F.2d 239 (2d

11   Cir. 1966)).  Despite the continued citation of this doctrine by numerous courts, it appears that the

12   doctrine, in its stated form at least, appears to have been rejected by the United Supreme Court's

13   decisions in *Calder v. Jones* and *Keeton v. Hustler Magazine, Inc.* regarding the specific personal

14   jurisdiction analysis.  *See Calder v. Jones*, 465 U.S. 783, 789-90 (1984) ("Petitioners are correct that

15   their contacts with California are not to be judged according to their employer's activities there.  On

16   the other hand, their status as employees does not somehow insulate them from jurisdiction.  Each

17   defendant's contacts with the forum State must be assessed individually."); *Keeton v. Hustler

18   Magazine, Inc.*, 465 U.S. 770, 781, n.13 (1984) ("[W]e today reject the suggestion that employees

19   who act in their official capacity are somehow shielded from suit in their individual capacity"); *see

20   also Kukui Gardens Corp. v. Holco Capital Group, Inc.*, 664 F. Supp. 2d 1103, 1110 (D. Haw.

21   2008) (questioning the continuing viability of the fiduciary shield doctrine).[9]  "Instead, the proper

22   inquiry is to look specifically at the minimum contacts of the individual regardless of whether that

23   individual was acting within his or her official capacity."  *Kukui Gardens*, 664 F. Supp. 2d at 1110

24   (citing *Calder*, 465 U.S. at 789-90); *see Rimes v. Noteware Dev. LLC*, No. C-09-0281 EMC, 2010

25   WL 3069250, at *2 (N.D. Cal. Aug. 4, 2010) ("[A]s long as [an individual defendant] has had

26

27       [9] Other courts in this District also have questioned the continuing viability of the doctrine.
     *See Rimes v. Noteware Dev. LLC*, No. C-09-0281 EMC, 2010 WL 3069250, at *2 (N.D. Cal. Aug. 4,
28   2010); *Blinglet, Inc. v. Amber Alert Safety Centers, Inc.*, No. C 09-05156 SI, 2010 WL 532388, at *1
     n.1 (N.D. Cal. Feb. 6, 2010).

sufficient contacts with California, whether in an official or personal capacity, then there is personal jurisdiction.").

It also is true that cases where specific personal jurisdiction was found to exist over individual corporate officer defendants have typically involved situations where the individual defendant was the "guiding spirit" behind the wrongful conduct . . . or the "central figure" in the challenged corporate activity.  *See Allstar Mktg. Group, LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1120 (C.D. Cal. 2009) (collecting cases); *Matsunoki Group, Inc. v. Timberwork Oregon, Inc.*, No. C 08-04078 CW, 2009 WL 1033818, at *3-4 (N.D. Cal. Apr. 16, 2009) (same).[10]  Accordingly, "[c]ourts have thus found a corporate officer's contacts on behalf of a corporation sufficient to subject the officer to personal jurisdiction where the officer 'is a "primary participant" in the alleged wrongdoing' or 'had "control of, and direct participation in the alleged activities."'"  *Id.* (quoting *Winery v. Graham*, No. C 06-3618 MHP, 2007 WL 963252, at *5 (N.D. Cal. Mar. 29, 2007) (citations omitted)).[11]  "Absent such participation and control, a defendant's limited contacts with the forum state will not suffice to establish personal jurisdiction where such contacts arise only by virtue of the individual's status as an employee of a company."  *Winery*, 2007 WL 963252, at *5 (citing *Colt Studio, Inc. v. Badpuppy Enter.*, 75 F. Supp. 2d 1104, 1112 (C.D. Cal. 1999)).

Here, Plaintiffs' allegations simply are too vague and conclusory to suggest that Mr. Otis has such degrees of participation or control.  *See* FAC, ECF No. 10 at ¶¶ 8, 20, 31-33.  Indeed, numerous courts have found specific personal jurisdiction lacking where a plaintiff's allegations are so limited.  *See Marsh v. Zaazoon Solutions, LLC*, No. C-11-05226 YGR, 2012 WL 92226, at *9

---

[10] Courts also find that where a corporation is the alter ego of its owners, specific personal jurisdiction over the corporation supports specific personal jurisdiction over the owners.  *See Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1393 (9th Cir. 1984); *see also Richmond Tech., Inc. v. Aumtech Bus. Solutions*, No. 11-CV-02460-LHK, 2011 WL 2607158, at *6 (N.D. Cal. July 1, 2011) (citing Flynt Distributing for this point).  Here, Plaintiffs do not assert that AngelVision is the alter ego of Mr. Otis.

[11] The court notes that the *Allstar Mktg.* opinion cites to *Matsunoki Group, Inc. v. Timberwork Oregon, Inc.*, No. C 08-04078 CW, 2009 WL 1033818, at *3-4 (N.D. Cal. Apr. 16, 2009) for this quotation, but the quotation actually appears in *Winery v. Graham*, No. C 06-3618 MHP, 2007 WL 963252, at *5 (N.D. Cal. Mar. 29, 2007), as the court cited above.

UNITED STATES DISTRICT COURT
For the Northern District of California

1    (N.D. Cal. Mar. 20, 2012) (ruling that plaintiffs did not meet their burden to show specific personal

2    jurisdiction over individual defendants where plaintiffs' second amended complaint was "devoid of

3    any allegations of a specific act" and instead contained only allegations that the individual

4    defendants were principals and members of the companies that operated the scam at issue and that

5    the individual defendants actively participated in the misconduct); *Clerkin v. MyLife.com, Inc.*, No.

6    C 11-00527 CW, 2011 WL 3607496, at *1-2, 4 (N.D. Cal. Aug. 16, 2011) (ruling that plaintiffs did

7    not meet their burden to show specific personal jurisdiction over an individual defendant who was

8    the corporate defendant's "Vice President of Emerging Business" where plaintiffs' only allegations

9    about him were that he "conspired with" others "to perpetuate" a fraudulent scheme and "personally

10   performed acts" in support of a fraudulent scheme because those allegations "[did] not afford any

11   insight into how [he] controlled or directly participated in the alleged fraudulent scheme"); *Just

12   Film, Inc. v. Merchant Servs., Inc.*, No. C 10-1993 CW, 2010 WL 4923146, at *6 (N.D. Cal. Nov.

13   29, 2010) (ruling that plaintiffs did not meet their burden to show specific personal jurisdiction over

14   certain individual defendants where plaintiffs alleged only that those individual defendants directed

15   and controlled the entities alleged to have engaged in the wrongful conduct and did not allege how

16   those individual defendants directed or controlled those entities).

17        And in the cases where courts have found that specific personal jurisdiction exists over

18   individual defendants who are employees of entity defendants, those plaintiffs—unlike Plaintiffs

19   here—usually alleged that the individual defendants did specific acts in furtherance of the specific

20   wrongful conduct at issue.  *See, e.g.*, *Enriquez v. Interstate Group, LLC*, No. 11-CV-05155 YGR,

21   2012 WL 3800801, at *4 & n.3 (N.D. Cal. Aug. 31, 2012) (court ruled that plaintiffs had met their

22   burden to show specific personal jurisdiction over an individual defendant who was the chief

23   operating officer of the entity defendant accused of violating federal employment law and who was

24   alleged to have promulgated both the policy decision to misclassify store managers as "exempt"

25   employees and to deny overtime compensation to sales associates, and to have personally fired one

26   plaintiff); *Holliday v. Lifestyle Life, Inc.*, No. C 09-4995 RS, 2010 WL 3910143, at *1, 4 & n.5

27   (N.D. Cal. Oct. 5, 2010) (court ruled that plaintiffs had met their burden to show specific personal

28   jurisdiction over individual corporate officer defendants where plaintiffs alleged that the individual

UNITED STATES DISTRICT COURT
For the Northern District of California

1   defendants controlled, or at least were involved in, the creation of the corporate employment policy

2   that denied overtime compensation to all non-exempt schedulers in violation of federal employment

3   law); *Blinglet, Inc. v. Amber Alert Safety Centers, Inc.*, No. C 09-05156 SI, 2010 WL 532388, at *1

4   (N.D. Cal. Feb. 6, 2010) (court ruled in a breach of contract action that plaintiff had met its burden

5   to show specific personal jurisdiction over an individual defendant who plaintiff alleged to have

6   signed the letter of intent setting forth the terms of the agreement that specified the ownership of

7   copyrighted software developed by both plaintiff and the corporate defendant, represented to

8   investors that the corporate defendant developed the software alone, and took concrete steps to

9   prevent plaintiff from capturing the portion of revenues to which it was contractually entitled).

10      The question then becomes whether the declarations Plaintiffs submitted, when added to their

11   allegations, are enough to support personal jurisdiction over Mr. Otis.  The court does not believe

12   they are.  The declarations add to the mix the following "facts"[12]:

13   • "In or about 2006," Mr. Renvoise "contacted AngelVision to assist SalesBrain in
     creating advertising (via an 'Impact Movie') for one of [SalesBrain's] clients and also
14      to offer AngelVision [SalesBrain's] services.  Since Mr. Otis was [Mr. Renvoise's]
     main contact at AngelVision, [Mr. Renvoise] sent him a copy of [Mr. Renvoise's and
15      Mr. Morin's] book, 'Selling to the Old Brain,' so that he would have an understanding
     of how we wanted to approach creating neuromarketing advertising for one of
16      [SalesBrain's] clients."  Jahn Declaration, Exh. B (Renvoise Declaration), ECF No. 27
     at 5 ¶ 3.  According to Mr. Renvoise, Mr. Otis "acknowledged that he was reading the
17      book, found it to be 'good stuff' and felt he understood the strategic approach
     [SalesBrain] wanted to take with [its] client."  Jahn Declaration, Exh. B (Renvoise
18      Declaration), ECF No. 27 at 5 ¶ 4.

19   • Sometime thereafter, Mr. Renvoise states that Mr. Otis "was assigned as the Account
     Manager" for SalesBrain.  Jahn Declaration, Exh. B (Renvoise Declaration), ECF No.
20      27 at 5 ¶ 5.  Mr. Renvoise and Mr. Otis "engaged in numerous phone calls with
     respect to incorporating SalesBrain's 4 step neuromarketing strategy, 'Diagnose the
21      Plain, Differentiate your Claims, Demonstrate the Gain, and Deliver to the Old Brain'
     into [SalesBrain's] client's marketing video."  Jahn Declaration, Exh. B (Renvoise
22      Declaration), ECF No. 27 at 5 ¶ 6.

23   • On January 16, 2012, roughly six years after the contact between Mr. Renvoise and

24   _____

25      [12] The court notes that Mr. Otis objects to the declarations that Plaintiffs submitted in support
     of their opposition brief (see Jahn Declaration (in turn, attaching Morin Declaration as Exhibit A,
26   Renvoise Declaration as Exhibit B, and Jingozian Declaration as Exhibit C)) and some of the
     statements made in them.  See Mr. Otis Objections, ECF No. 32.  Because some of the objections
27   easily could be remedied (e.g., Mr. Morin's and Mr. failure to swear under penalty of perjury "under
     the laws of the United States"), and, more importantly, because the statements in the declarations do
28   not change the court's decision, the court does not rule on Mr. Otis's objections now.

1    Mr. Otis that Mr. Renvoise described in his declaration, Mr. Morin "received a[] post
     on the ["Coffee with AngelVision"] webinar chat site from [Mr.] Otis acknowledging
2    [Mr. Morin's attendance at the webinar stating something to the effect [of,] 'nice to
     have you joining us for Coffee again.'"  Jahn Declaration, Exh. A (Morin
3    Declaration), ECF No. 27 at 3 ¶ 4.

4    •   During the "Coffee with AngelVision" webinar, Mr. Morin "noticed [that]
         AngelVision used at least four slides containing SalesBrain's 4 part neuromarketing
5        strategy[,] 'Diagnose the Pain, Differentiate your claims, Demonstrate the Gain and
         Deliver to the Old Brain.'"  Jahn Declaration, Exh. A (Morin Declaration), ECF No.
6        27 at 3 ¶ 5.

7    •   "Shortly after attending the webinar and noticing AngelVision's [] use of
         [SalesBrain's] material," Mr. Morin "also view AngelVision's 'Impact Movie' and
8        noticed [that] at least one slide contained SalesBrain's neuromarketing strategy."  Jahn
         Declaration, Exh. A (Morin Declaration), ECF No. 27 at 3 ¶ 6.[13]

9

10       Plaintiffs make several arguments about why these "facts" support specific personal jurisdiction

11   over Mr. Otis, but all of them are unavailing.  First, Plaintiffs point out that Mr. Otis, as Account

12   Manager for AngelVision, "was educated by SalesBrain" about SalesBrain's neuromarketing

13   principles and "received a copy of SalesBrain's book" discussing those principles.  It then argues

14   that this somehow supports the conclusion that Mr. Otis "committed an intentional act when he

15   supervised, directed, or participated in the infringing act(s), namely, the creation and publication via

16   the Internet of 'Coffee with AngelVision' and/or AngelVision's 'Impact Movie' which included

17   several slides containing Plaintiffs['] [C]opyrighted [W]orks."  Opposition to Otis Motion, ECF No.

18   26 at 12.  But this conclusion does not follow from the statement that Mr. Otis learned about

19   SalesBrain' neuromarketing principles from 2006 through 2008.  Mr. Otis's purported knowledge of

20   these principles says nothing about Mr. Otis's supervision of, direction of, or participation in a

21   "Coffee with AngelVision" webinar that Mr. Morin purportedly saw in January 2012.

22       Second, Plaintiffs argue: "Certainly, as president of AngelVision and the account manager for

23   the SalesBrain transaction who interfaced most with [Mr.] Renvoise and was specifically instructed

24   how to use Plaintiffs' four part neuromarketing strategy in creating advertising, [Mr.] Otis

25   _____

26       [13] SalesBrain also submitted a declaration by Mike Jingozian that provides details about
     AngelVision's "Impact Movies" and AngelVision's client base.  Jahn Declaration, Exh. C
27   (Jingozian Declaration), ECF No. 27 at 9-10.  The court finds these details, even if true, to be
     irrelevant to the court's analysis of whether Mr. Otis, in individual capacity, purposefully directed
28   activities at California.

C 12-05026 LB
ORDER                                          15

1   inferentially participated in, directed, and/or supervised AngelVision's commercial marketing

2   advertisements."  Opposition to Otis Motion, ECF No. 26 at 13.  Again, the conclusion does not

3   follow: that Mr. Otis, on behalf of AngelVision, worked with Plaintiffs in 2006 through 2008 to

4   create an "Impact Movie" that featured SalesBrain's neuromarketing principles does not infer that

5   Mr. Otis supervised, directed, or participated in a "Coffee with AngelVision" webinar that Mr.

6   Morin purportedly saw in January 2012.

7        Third, Plaintiffs argue Mr. Otis's comment that it was "nice to see [Mr. Morin] joining us for

8   Coffee again" shows that Mr. Otis knew that the allegedly infringing webinar would reach

9   California, but this comment does not demonstrate that Mr. Otis supervised, directed, or participated

10  in the presentation of that webinar.  *See* Opposition to Otis Motion, ECF No. 26 at 13.

11       Simply put, Plaintiffs' allegations and "facts" regarding Mr. Otis are far too attenuated from the

12  alleged misuse of SalesBrain's neuromarketing principles to support a finding that specific personal

13  jurisdiction exists of Mr. Otis in his individual capacity.  *Cf. Rimes*, 2010 WL 3069250, at *2 (in an

14  employment action, the court found that specific personal jurisdiction existed over individual

15  defendant who admitted that he was the sole owner of, managing member of, and principal actor in

16  the entity defendant; that he personally "prepare[d] the initial draft of the [entity defendant's]

17  compensation agreement with [Plaintiff] and submitted it to [Plaintiff] for his review and comment";

18  and that he "sent a reply letter to [Plaintiff's] request for payment of merit bonuses," refusing to

19  grant the request.); *Matsunoki Group*, 2009 WL 1033818, at *3-4 (in a copyright and trademark

20  infringement action, the court found, after reviewing the evidence submitted, that specific personal

21  jurisdiction existed over an individual defendant: who: (1) "seem[ed] to enjoy significant if not

22  complete control over decisions made on behalf of" the entity defendant; (2) had duties that included

23  sales and purchasing; (3) "never had more than two employees working for him"; (4) "admit[ted] to

24  having final approval on every decision pertaining to the operation of" the entity defendant; (5) with

25  the exception of invoicing, "was the only person from [the entity defendant] who was involved in

26  working with the Paul Defendants on their home in California"; and (6) "[did] not dispute that he

27  personally sold materials to companies and individuals in California and built several residences in

28  California including the one at issue in this action").  On this record, then, the court finds that Mr.

1    Otis did not purposefully direct activities at California; therefore, specific personal jurisdiction does

2    not exist over him.[14]   Accordingly, the court **GRANTS** his motion, and **DISMISSES WITHOUT**

3    **PREJUDICE** Plaintiffs' first and second claims insofar as they are brought against him.[15]

4    **III.  ANGELVISION'S MOTION TO DISMISS FOR FAILURE TO STATE CLAIMS**

5         SalesBrain brings four claims against AngelVision: for copyright infringement, breach of

6    contract, breach of the implied covenant of good faith and fair dealing, and trademark infringement

7    under the Lanham Act, 15 U.S.C. § 1125(a).  FAC, ECF No. 10 ¶¶ 26-29, 35-47.  AngelVision

8    moves to dismiss SalesBrain's third (breach of contract), fourth, (breach of the implied covenant of

9    good faith and fair dealing), and fifth (trademark infringement under the Lanham Act, 15 U.S.C. §

10   1125(a)) claims for failure to state claims upon which relief can be granted.  *See* AngelVision

11   Motion, ECF No. 16.

12        **A.  Legal Standard**

13        A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it

14   does not contain enough facts to state a claim to relief that is plausible on its face.  *See Bell Atlantic*

15   *Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff

16   pleads factual content that allows the court to draw the reasonable inference that the defendant is

17   liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  "The plausibility

18   standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a

19

20

21        [14] Because the court finds that Plaintiffs did not meet their burden to show that the first prong
     of the applicable test for specific personal jurisdiction, the court does not reach the second and third
22   prongs of that test.

23        [15] The court dismisses Plaintiffs' claims against Mr. Otis without prejudice to allow for the
     possibility that Plaintiffs may discover additional information that could support specific personal
24   jurisdiction over him.  If this occurs, Plaintiffs must file a motion for leave to amend the operative
     complaint to add him as a Defendant.  *See Marsh v. Zaazoon Solutions, LLC*, No. C-11-05226 YGR,
25   2012 WL 92226, at *10 (N.D. Cal. Mar. 20, 2012) ("Plaintiffs may request leave to amend the
     complaint if they obtain facts in the future indicating that such an amendment would be
26   warranted."); *Clerkin v. MyLife.com, Inc.*, No. C 11-00527 CW, 2011 WL 3607496, at *4 (N.D. Cal.
     Aug. 16, 2011) ("If, in the course of otherwise permissible discovery in this case, Plaintiffs learn of
27   information that would support specific personal jurisdiction over [the individual defendant], they
     may promptly move for leave to add him as a Defendant.").
28

UNITED STATES DISTRICT COURT
For the Northern District of California

1    defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557.).  "While a complaint

2    attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's

3    obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

4    conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual

5    allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S.

6    at 555 (internal citations and parentheticals omitted).

7        In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true

8    and construe them in the light most favorable to the plaintiff.  *See id.* at 550; *see also Erickson v.*

9    *Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir.

10   2007).

11       If the court dismisses the complaint, it should grant leave to amend even if no request to amend

12   is made "unless it determines that the pleading could not possibly be cured by the allegation of other

13   facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*quoting Cook, Perkiss and Liehe, Inc.*

14   *v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)).  But when a party

15   repeatedly fails to cure deficiencies, the court may order dismissal without leave to amend.  *See*

16   *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (affirming dismissal with prejudice where

17   district court had instructed *pro se* plaintiff regarding deficiencies in prior order dismissing claim

18   with leave to amend).

19   **B. Discussion**

20       Each of AngelVision's arguments with respect to Plaintiffs' third, fourth, and fifth claims are

21   addressed in turn below.

22       *1. Third Claim*

23       AngelVision argues that Plaintiffs' third claim for breach of contract fails because (1) the NDA

24   expired before any of the allegedly wrongful conduct occurred and (2) the NDA's confidentiality,

25   non-use, and non-disclosure obligations were not violated because SalesBrain's neuromarketing

26   principals are not "Proprietary Information" as defined in the NDA.  AngelVision Motion, ECF No.

27   16 at 7-8.

28       Under California law, the mutual intent of the parties at the time of contract formation governs

1   the meaning of a contract.  *See Lexington Ins. Co. v. Commonwealth Ins. Co.*, C98-3477 CRB(JCS),

2   1999 WL 33292943 at *4 (N.D. Cal. Sep 17, 1999) (citation omitted); *Waller v. Truck Ins.*

3   *Exchange, Inc.*, 11 Cal. 4th 1, 18 (1995).  "Where the terms of the contract are unambiguous, a court

4   must enforce the contract according to its plain meaning."  *Netbula, LLC v. Chordiant Software,*

5   *Inc.*, No. C 08–00019 JW, 2009 WL 2044693, at *3 (N.D. Cal. July 9, 2009) (citing *Waller*, 11 Cal.

6   4th at 18.  "However, where the terms of the contract are ambiguous—i.e., susceptible to more than

7   one reasonable construction—extrinsic evidence must be introduced to determine the parties'

8   intent."  *Id.* (citing *Benach v. County of Los Angeles*, 149 Cal. App. 4th 836, 847 (2007)).

9       "Whether language in a contract is ambiguous is a question of law to be answered by the court."

10  *SCC Alameda Point LLC v. City of Alameda*, No. C 10–05178 CRB, 2012 WL 4059884, at *6 (N.D.

11  Cal. Sep. 14, 2012) (citing *Producers Dairy Delivery Co. v. Sentry Ins. Co.*, 41 Cal.3d 903, 904

12  (1986)).  "Interpretation of an unambiguous contract is also a question of law."  *Id.* (citing *Abifadel*

13  *v. Cigna Ins. Co.*, 8 Cal. App. 4th 145, 159 (1992)).  But "where the interpretation of a contract turns

14  on the credibility of conflicting extrinsic evidence, a question of fact exists that must be resolved by

15  the trier of fact."  *Netbula*, 2009 WL 2044693, at *3 (citing *Benach*, 149 Cal. App. 4th at 847).

16      Regarding AngelVision's first argument, it is both true and uncontested that the NDA's

17  confidentiality, non-use, and non-disclosure obligations expired on April 8, 2010, two years after

18  Mr. Renvoise signed the NDA.  *See* Otis Declaration, Exh. A, ECF No. 18-1 at 3 (stating in

19  Paragraph 6(e) that "[t]he confidentiality, non-use, and non-disclosure obligations set forth in this

20  Agreement shall survive with respect to each item of the Proprietary Information for two years from

21  the date of this Agreement."); *see also* Opposition to AngelVision Motion, ECF No. 23 at 4-5 (not

22  arguing otherwise).  The only counterargument Plaintiffs make on this point is that Paragraph 6(e) of

23  the NDA "does not provide for any expiration of the restrictions with respect to exploiting

24  SalesBrain's Proprietary Information."  Opposition to AngelVision's Motion, ECF No. 23 at 5

25  (emphasis added).  Although they do not elaborate on this argument at all, Plaintiffs must be

26  referring to this sentence from Paragraph 3 of the NDA: "The Recipient shall use such Proprietary

27  Information only for the purposes contemplated by this Agreement and shall not use or exploit such

28  Proprietary Information, either directly or indirectly, for its own benefit, for the benefit of another,

UNITED STATES DISTRICT COURT
For the Northern District of California

1    or to compete with the Disclosing Party without the prior written consent of the Disclosing Party."

2    Otis Declaration, Exh. A, ECF No. 18-1 at 2.  But Plaintiffs' argument, which is not explicitly

3    stated, that this sentence constitutes distinct prohibitions on using Proprietary Information and on

4    exploiting Proprietary Information is unreasonable.  The infinitive "to exploit" clearly is

5    encompassed within the infinitive "to use," for how could one "exploit" Proprietary Information

6    without "using" it?  Indeed, as one district court has noted, "[t]he term 'exploit' means 'to make

7    productive use of,' 'utilize,' or ['to] make use of meanly or unjustly for one's own advantage[']."

8    *Air Turbine Tech., Inc. v. Alas Copco AB*, 295 F. Supp. 2d 1334, 1347 (S.D. Fla. 2003) (quoting

9    Merriam-Webster's Collegiate Dictionary 409 (10th ed. 1996)).  The court therefore finds that the

10   NDA confidentiality, non-use, and non-disclosure obligations expired on April 8, 2010 and that the

11   NDA's prohibition on "exploiting" Proprietary Information unambiguously is included within this

12   expiration date.[16]

13       This is important because, as AngelVision points out, the only conduct that Plaintiffs contend

14   violates the NDA occurred "in or about the winter of 2011/2012," FAC, ECF No. 10 ¶¶ 17-18, well

15   after the NDA's expiration date.  AngelVision Motion, ECF No. 16 at 7-8.  Plaintiffs attempt to get

16   around this by arguing that because "the parties' business relationship started in or about April 2008,

17   it is very likely AngelVision was using SalesBrain's proprietary copyright materials in its

18   advertising since that time."  Opposition to AngelVision Motion, ECF No. 23 at 5.  Indeed, Plaintiffs

19   argue that "[s]imply because Plaintiffs had notice of AngelVision's infringement in early January

20   2012 does not mean AngelVision was not violating the terms of the NDA prior to that time."  *Id.* at

21   4-5.  The problem with this argument is that it is wholly conclusory and unsupported by factual

22   allegations in the First Amended Complaint or evidence in the record in this case.  Without factual

23   allegations or evidence in the record, Plaintiffs' breach of contract claim does not "raise a right to

24   relief above the speculative level."  *Twombly*, 550 U.S. at 555 (internal citations and parentheticals

25   omitted); *see Montana Silversmiths, Inc. v. Taylor Brands, LLC*, 850 F. Supp. 2d 1172, 1178 (D.

26   Mont. 2012) (in light of the expiration on July 1, 2010 of a contractual duty to maintain the

27   ───────────────

28        [16] And even if Plaintiffs' argument was a reasonable one, Plaintiffs submitted no extrinsic evidence of the parties' intent with respect to prohibition.

confidentiality of trade secrets, the court stated that "the Complaint must allege acts occurring on or before July 15, 2010 to state plausible claims arising out of the breach" of the confidentiality agreement). Accordingly, Plaintiffs' third claim for breach of contract is **DISMISSED WITHOUT PREJUDICE**. If, during the course of discovery on Plaintiffs' remaining copyright infringement claim, Plaintiffs later discover facts that could support a plausible claim that AngelVision breached the terms of the NDA before it expired, Plaintiffs may move to amend the complaint to add them.[17] Until then, the court need not reach AngelVision's other argument that the NDA's confidentiality, non-use, and non-disclosure obligations were not violated because SalesBrain's neuromarketing principals are not "Proprietary Information" as defined in the NDA.

### 2. Fourth Claim

AngelVision argues that Plaintiffs' fourth claim for breach of the implied covenant of good faith and fair dealing fails because Plaintiffs' breach of contract fails. AngelVision Motion, ECF No. 16 at 8-9. In this particular instance, AngelVision is correct.

California law implies a covenant of good faith and fair dealing in every contract. *Carma Developers, Inc. v. Marathon Dev. Calif., Inc.*, 2 Cal. 4th 342, 371 (1992). "'The obligations imposed by the covenant of good faith and fair dealing are not those set out in the term of the contract itself, but rather are obligations imposed by law governing the manner in which the contractual obligations must be discharged-fairly and in good faith.'" *Dunkel v. eBay, Inc.*, No. 5:12–CV–01452–EJD, 2013 WL 415584, at *9 (N.D. Cal. Jan. 31, 2013) (quoting *Koehrer v. Sup. Ct.*, 181 Cal. App. 3d 1155, 1169 (1986)). "However, the contours of any party's duty under the covenant, as well as any conduct prohibited by the covenant, are determined by the purposes and terms of the contract at issue." *Id.* (citing *Inter–Mark USA, Inc. v. Intuit, Inc.*, No. 07–CV–04178, 2008 WL 552482, *7 (N.D. Cal. Feb. 27, 2008) (quoting *Commercial Union Assurance Cos. v. Safeway Stores, Inc.*, 26 Cal. 3d 912, 918 (1980) and *Carma Developers*, 2 Cal.4th at 373)). Thus, "[i]n order to state a claim for breach of an implied covenant of good faith and fair dealing, the specific contractual obligation from which the imposed covenant of good faith and fair dealing arose

---

[17] AngelVision did not move to dismiss SalesBrain's first claim for copyright infringement. *See generally* AngelVision Motion, ECF No. 16.

must be alleged." *InterMark USA*, 2008 WL 552482 at *6.

In addition, a plaintiff also must show "that the conduct of the defendant, whether or not it also constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual responsibilities." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 22 Cal. App. 3d 1371, 1395 (1990). "If the allegations in a breach of implied covenant claim do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." *Malcolm v. JP Morgan Chase Bank, N.A.*, No. 09–CV–4496, 2010 WL 934252, *6 (N.D. Cal. Mar. 15, 2010) (quoting *Schulken v. Wash. Mut. Bank*, No. 09–CV–02708, 2009 WL 4173525 (N.D. Cal. Nov. 19, 2009)).

Here, Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing is based entirely on the same conduct (the use of SalesBrain's neuromarketing principles in a webinar in January 2012) and the same contractual provisions (the NDA's confidentiality, non-use, and non-disclosure obligations) upon which their breach of contract claim is based. Plaintiffs do not argue otherwise. See Opposition to AngelVision Motion, ECF No. 23 at 5 (arguing only that "if Plaintiffs' breach of contract claim stands, so too should [their claim for] breach of the implied covenant of good faith and fair dealing"). For this reason, the court finds that Plaintiffs' fourth claim for breach of the implied covenant of good faith and fair dealing is **DISMISSED WITHOUT PREJUDICE**.

### 3. Fifth Claim

AngelVision argues that Plaintiffs' fifth claim for trademark infringement fails because (1) it did not misrepresent the source or origin of SalesBrain's neuromarketing principles and (2) SalesBrain's neuromarketing principles are not protectible under the Lanham Act. AngelVision Motion, ECF No. 15 at 9-10.

"The Lanham Act was intended to make 'actionable the deceptive and misleading use of marks,' and 'to protect persons engaged in . . . commerce against unfair competition.'" *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 (2003) (quoting 15 U.S.C. § 1127). The Act "prohibits actions like trademark infringement that deceive consumers and impair a producer's goodwill." *Id.* at 32. "To this end, section 43(a) of the Act, 15 U.S.C. § 1125(a), proscribes 'the use

UNITED STATES DISTRICT COURT
For the Northern District of California

of false designations of origin, false descriptions, and false representations in the advertizing and sale of goods and services.'" *Sleep Science Partners v. Lieberman*, No. 09–04200 CW, 2010 WL 1881770, at *2 (N.D. Cal. May 10, 2010) (quoting *Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1036 (9th Cir.2005)).[18]

To prevail on a Lanham Act trademark infringement claim, a plaintiff "'must prove: (1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion.'" *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011) (quoting *Dep't of Parks & Recreation v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006)); *see also Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1202-03 (9th Cir. 2012).

AngelVision's first argument focuses on consumer confusion. "The 'likelihood of confusion' inquiry generally considers whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin or source of the goods or services bearing one of the marks or names at issue in the case." *Rearden LLC*, 683 F.3d at 1209 (citing *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1140 (9th Cir. 2002)). "To succeed, a plaintiff must show more than simply a possibility of such confusion." *Id.* (citing *Rodeo Collection, Ltd. v. W. Seventh*, 812 F.2d 1215, 1217 (9th Cir. 1987), abrogated on other grounds by *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 393 (2006).

---

[18] Section 43(a)(1) of the Lanham Act, 15 U.S.C. § 1125(a)(1) states in pertinent part:

Any person who, on or in connection with any goods or services, . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive . . . as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

UNITED STATES DISTRICT COURT
For the Northern District of California

1    The Ninth Circuit has articulated a non-exhaustive list of factors to be used in evaluating the

2    likelihood of confusion by consumers.  *See AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–349

3    (9th Cir. 1979).  The following factors are relevant in the analysis: (1) strength of the mark; (2)

4    proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing

5    channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7)

6    the defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines.

7    *See id.*  Some factors are more important than others and the relative significance of each factor will

8    be case specific.  *See Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d

9    1036, 1054 (9th Cir. 1999).[19]

10

11        [19] The Ninth Circuit has further elaborated on the application of these factors:

12
13        It is well established that this multi-factor approach must be applied in a
     flexible fashion. The *Sleekcraft* factors are intended to function as a proxy or
14        substitute for consumer confusion, not a rote checklist. *See, e.g., Network*
     [*Automation, Inc. v. Advanced Systems Concepts, Inc.*], 638 F.3d [1137,] 1145[ (9th
15        Cir. 2011)].  In other words, "we do not count beans."  *Dreamwerks Prod. Grp., Inc.
     v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998).  A determination may rest on
16        only those factors that are most pertinent to the particular case before the court, and
     other variables besides the enumerated factors should also be taken into account
17        based on the particular circumstances. *See, e.g., Network*, 638 F.3d at 1142, 1145,
     1148–49, 1153–54; *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 631 (9th
18        Cir. 2005).  For example, this Court has pointed to three factors ("similarity of the
     marks," "proximity of the goods," and the simultaneous use of the Internet for
19        marketing) as especially important in cases involving similar domain names.  *See,
     e.g., Network*, 638 F.3d at 1148–49.  While the "internet trinity" is weighed heavily
20        in domain cases, "it makes no sense to prioritize the same three factors for every type
     of potential online commercial activity." *Id.* at 1148–49.  On the other hand,
21        evidence of actual confusion, at least on the part of an appreciable portion of the
     actual consuming public, constitutes strong support for a "likelihood of confusion"
22        finding.  *See, e.g., Playboy Enterprises, Inc. v. Netscape Communications Corp.*, 354
     F.3d 1020, 1026 (9th Cir. 2004).  "[T]he result of the consideration of one factor can
23        influence the consideration of another."  *Entrepreneur*, 279 F.3d at 1145 n.9.  In the
     end, "[t]his eight-factor analysis is 'pliant,' illustrative rather than exhaustive, and
24        best understood as simply providing helpful guideposts." *Fortune* [*Dynamic, Inc. v.
     Victoria's Secret Stores Brand Mgmt., Inc.*], 618 F.3d [1025,] 1030[ (9th Cir. (2010)]
25        (quoting *Brookfield* [*Commc'ns, Inc. v. West Coast Entm't Corp.*], 174 F.3d [1036,]
     1054[ (9th Cir. 1999)]).
26

27

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1    Here, Plaintiffs allege that SalesBrain has used its four neuromarketing principals as a tagline

2    since at least 2003 and therefore have built up goodwill such that it is entitled to trademark

3    protection.  *See* FAC, ECF No. 10 ¶¶ 21-23.  Plaintiffs also allege that AngelVision, "with at least

4    constructive notice" of SalesBrain's rights with respect to the tag line, "adopted and used" the tag

5    line in preparing sales and marketing materials to others, and that this use "is likely to cause

6    confusion, mistake, or to deceive as to origin, affiliation, connection, sponsorship, or association of

7    AngelVision with SalesBrain, or as to the origin, sponsorship, or approval of AngelVision's use of"

8    the tagline by SalesBrain.  *Id.* ¶¶ 24, 45.  AngelVision argues, in essence, that no one could possibly

9    be confused by its use of SalesBrain's tagline because it attributed the four neuromarketing

10   principles to SalesBrain.  See AngelVision Motion, ECF No. 16 at 9-10.  Indeed, as noted above,

11   SalesBrain attached to its First Amended Complaint screenshots of AngelVision's "Coffee with

12   AngelVision" webinar that contain SalesBrain's four neuromarketing principals.  *See id.*, Exh. C.

13   Below the four marketing principals the following is stated: "Source: SalesBrain."  *See id.*

14       Without more, the court is hard-pressed to understand how AngelVision's inclusion of

15   SalesBrain's four neuromarketing principals would cause consumer confusion, given that

16   AngelVision clearly attributes them to SalesBrain.  And Plaintiffs have not provide anything more.

17   On this point, their opposition brief merely provides basic legal standards for trademark

18   infringement and recites the trademark infringement-related allegations from its First Amended

19   Complaint.  Opposition to AngelVision Motion, ECF No. 23 at 6-7.  Accordingly, Plaintiffs' fifth

20   claim for false designation of origin under Section 43(a) of the Lanham Act is **DISMISSED**

21   **WITHOUT PREJUDICE**.

22                                    **CONCLUSION**

23       Based on the foregoing, the court **DISMISSES** Mr. Morin and Mr. Renvoise as plaintiffs to this

24   action, **GRANTS** Mr. Otis's motion to dismiss for lack of personal jurisdiction, and **GRANTS**

25   AngelVision's motion to dismiss for failure to state a claim upon which relief may be granted.

26   Plaintiffs' first and second claims as **DISMISSED WITHOUT PREJUDICE** insofar as they are

27

28

*Rearden LLC*, 683 F.3d at 1209-10.

C 12-05026 LB
ORDER                                    25

brought against Mr. Otis.  Plaintiffs' third, fourth, and fifth, claims are **DISMISSED WITHOUT PREJUDICE**.  SalesBrain may file a Second Amended Complaint within 21 days from the date of this order.

    **IT IS SO ORDERED.**

Dated: March 21, 2013

_____
LAUREL BEELER
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

C 12-05026 LB
ORDER